**V–TECH SERVICES, INC., Appellant**

v.

**Thomas Milton STREET, Sr., Notlim Incorporated, John H. Velardi, Sr., Philadelphia Airport Services, A Joint Venture, Affiliated Building Services, LLC, and Linc Facility Services, LLC, Appellee.**

Superior Court of Pennsylvania.

Argued May 14, 2013.

Filed July 3, 2013.

Alan M. Feldman, Philadelphia, for appellant.

Joseph F. O'Dea, Jr., Philadelphia, for appellees.

BEFORE: STEVENS, P.J., COLVILLE, J.,* and FITZGERALD, J.**

OPINION BY STEVENS, P.J.

This is an appeal from the judgment entered in the Court of Common Pleas of Philadelphia County in favor of Appellees John S. Velardi, Sr. (hereinafter Mr. Velardi), Philadelphia Airport Services (hereinafter PAS), Affiliated Building Services, LLC (hereinafter Affiliated Building), and Linc Facility Services, Inc. (hereinafter Linc Facility),[1] with regard to Appellant V–Tech Services, Inc.'s claims of fraud and

---

\* Retired Senior Judge assigned to the Superior Court.

\*\* Former Justice specially assigned to the Superior Court.

1. Where appropriate, we shall collectively refer to these parties as "Appellees."

2. The trial court found in favor of Appellant as it relates to claims against Thomas Milton

promissory estoppel.[2] After a careful review, we affirm.

The esteemed trial judge, the Honorable Arnold L. New, has thoroughly set forth, in relevant part, the facts and procedural history underlying this case, and we adopt them as our own. *See* Trial Court Opinion filed 4/12/12 at 1–18. We supplement Judge New's procedural history by noting that, on April 12, 2012, following the non-jury trial based on the stipulated record, Judge New assessed compensatory damages against Thomas Milton Street, Sr. (hereinafter Mr. Street) individually in the amount of $30,000 and against Notlim, Inc. (hereinafter Notlim) in the amount of $338,382.00, and punitive damages against Notlim in the amount of $338,382.00, in connection with the default judgment entered in favor of Appellant as to these two parties. Moreover, on April 12, 2012, Judge New found in favor of Mr. Velardi, PAS, Affiliated Building, and Linc Facility and against Appellant on the claims of fraud and promissory estoppel. Thereafter, Appellant filed timely post-trial motions on Monday, April 23, 2012, which the trial court denied on August 2, 2012. Appellant filed a praecipe to enter judgment, and a timely notice of appeal on August 27, 2012. The trial court did not direct the filing of a Pa.R.A.P. 1925(b) statement, and therefore, no such statement was filed.

Appellant's first contention is it is entitled to judgment notwithstanding the verdict (JNOV) for its claims of fraud and promissory estoppel as it relates to Mr. Velardi, PAS, and Linc Facility. Specifi-

---

Street, Sr., and Notlim, Inc. The judgment reveals an award of compensatory damages to Appellant in a combined amount of $368,382.00, and $338,382.00 in punitive damages against Notlim. Appellant has not presented any challenges to either the verdict or award of damages as it relates to Mr. Street and Notlim.

cally, Appellant contends the trial court disregarded Appellant's credible evidence demonstrating Mr. Velardi participated in Mr. Street's fraudulent assignment and falsely promised Appellant it would have the opportunity to perform under the baggage maintenance contract.[3] *See* Appellant's Brief at 32–39. Appellant suggests "no two reasonable minds could disagree" that, contrary to the trial court's conclusion, Mr. Velardi individually, and on behalf of PAS and Linc Facility, made affirmative representations to Appellant regarding the assignment of the baggage maintenance contract to Appellant and he was, in fact, aware of the assignment at relevant times prior to the filing of this lawsuit.[4]

■ Our standard of review of a trial court order denying a JNOV motion is as follows:

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*O'Kelly v. Dawson*, 62 A.3d 414, 419 (Pa.Super.2013) (quotation and citation omitted).

■ Fraud is actionable in tort. *See Gorski v. Smith*, 812 A.2d 683 (Pa.Super.2002).

The essential elements of a cause of action for fraud or deceit are misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon and damage as a proximate result. To be actionable, a misrepresentation need not be in the form of a positive assertion but is any artifice by which a person is deceived to his disadvantage and may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. Concealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, provided that the other requisite elements of

3. Mr. Street and Notlim failed to answer Appellant's complaint, which included claims of fraud and promissory estoppel as it related to the assignment of the baggage maintenance contract for the Philadelphia International Airport. Thus, on October 29, 2007, a default judgment was entered against Mr. Street and Notlim.

4. Appellant contends that, if this Court concludes the trial court erred in finding the evidence does not support a finding of liability for fraud and promissory estoppel as it relates to Mr. Velardi, we should remand for the trial court to impose punitive damages upon Mr. Velardi, PAS, and Linc Facility. *See* Appellant's Brief at 41–42. However, as discussed *infra*, we find the trial court did not err in this regard, and, therefore, we need not discuss Appellant's issue concerning punitive damages further.

fraud are established. While concealment may constitute fraud, however, mere silence is not sufficient in the absence of a duty to speak.

*Wilson v. Donegal Mutual Insurance Company,* 410 Pa.Super. 31, 598 A.2d 1310, 1315 (1991) (citations omitted). *See The Brickman Group, Ltd., v. CGU Insurance Company,* 865 A.2d 918 (Pa.Super.2004). Fraud must be proven by clear and convincing evidence. *See Snell v. Com. State Examining Board,* 490 Pa. 277, 416 A.2d 468 (1980).

The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. To maintain a promissory estoppel action a claimant must aver the following elements: '(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.' *Crouse v. Cyclops Industries,* 560 Pa. 394, 403, 745 A.2d 606, 611 (2000) (noting that elements of promissory estoppel claim sound in contract for purpose of determining applicable statute of limitations).

*Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710, 717–18 (Pa.Super.2005) (citations omitted).

■■■■ In rejecting Appellant's claim for JNOV regarding fraud and promissory estoppel, the trial court stated, in relevant part, the following:

The burden of proof standard in a fraud claim is clear and convincing evidence. 'Clear and convincing evidence' is the highest burden in our civil law and requires that the fact-finder be able to 'come to clear conviction,' without hesitancy, of the truth of the precise fact in issue. To meet that standard, it necessarily means that the witnesses must be found to be credible, that the facts to which they have testified are remembered distinctly, and that their testimony is so clear, direct, weighty, and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

At the center of this dispute is whether [Mr.] Velardi did not make any affirmative representations · concerning assignment of the baggage maintenance contract to [Appellant]. [Mr.] Velardi or PAS never received any monies [Appellant] paid to [Mr.] Street. A fully executed assignment approval letter dated on PAS letterhead was never produced by [Appellant]. Toppin,[5] the only other witness present for the September 22, 2003 meeting, never saw an assignment approval letter signed by [Mr.] Velardi. [Mr.] Velardi never participated in any meetings with [Appellant], [Mr.] Street and Toppin prior to September 22, 2003.

The evidence demonstrates PAS intended to enter into a direct contract with [Appellant] for $1.3 million. [Mr.] Velardi included [Appellant] in PAS internal budgets, forwarded [Appellant] a contract to perform baggage maintenance directly and PAS cancelled its baggage maintenance contract with Notlim on September 23, 2003.

\* \* \*

[With regard to promissory estoppel], [Appellant] claims [Mr.] Velardi promised it would be performing the baggage

---

5. "Toppin" refers to Sherman Toppin, Esquire, who was Mr. Street's son-in-law and attorney during the discussions with Appellant regarding the assignment of the baggage maintenance contract. *See* Trial Court Opinion filed 4/12/12 at 10.

maintenance contract as of January 4, 2010 under the terms of the Assignment and earning profits similar to those laid out in the Notlim Profit Calculation. The record evidence, however, fails to demonstrate the existence of such a promise. Indeed, the record evidence demonstrates that [Mr.] Velardi desired to enter into a direct contract with [Appellant] as set forth in Trial Exhibit "P–134." Moreover, the subcontract did not adopt the Notlim Profit Calculation. Instead, the subcontract provided the total base for the Scope of Work was not to exceed $1,345,000.00 per annum for Schedules B, C, and D.

Trial Court Opinion filed 4/12/12 at 19–21 (footnote and citation omitted).

■ We find no abuse of discretion or error in the trial court's denial of Appellant's motion for JNOV on this basis. *See Reott v. Asia Trend, Inc.*, 55 A.3d 1088 (Pa.2012). Specifically, viewing the evidence in the light most favorable to Appellees, there is sufficient competent evidence to sustain the trial court's verdict. The fact Appellant desires the trial court to find its evidence to be more credible than that presented by Appellees does not alter our decision. Moreover, although Appellant suggests Judge New did not consider all of the evidence presented during the proceedings before the deceased Judge Albert Sheppard, we note Judge New stated the following at the commencement of the post-trial hearing:

> Just as a short introduction, this matter was heard before Judge [Albert] Sheppard on a non-jury trial. Judge Sheppard unfortunately passed before he had the opportunity to rule on this matter.

Counsel by agreement allowed me to read the record as opposed to having a new trial with witnesses, live witnesses. This Court spent considerable time which was necessary and read every word of the transcript and read and reviewed every document that was submitted in evidence and issued an opinion based upon the record and the exhibits. I did not, as agreed upon, have the opportunity to see live testimony.

N.T. 7/31/12 at 3. Based on our review of the record, we find Judge New considered all of the evidence and, in fact, his numerous factual findings are supported by the record.

Appellant's next contention is it is entitled to JNOV for its claims of fraud and promissory estoppel as it relates to Mr. Velardi, PAS, and Linc Facility under the theory of agency. That is, Appellant contends the evidence is such "no two reasonable minds could disagree" that Mr. Street was an actual or apparent agent of PAS and Linc Facility as it pertained to the assignment of the baggage maintenance contract, and Appellant was entitled to JNOV as a matter of law. With regard to the issue of agency, Appellant specifically suggests the following:

> Notlim [was] an entity which never existed [and] was merely a fictitious corporation created by and indistinguishable from PAS. The evidence ... demonstrated that Notlim was created by Appellees for the sole purpose of defrauding the City and illegally creating the false appearance of compliance with the City's MBEC [6] requirements. In effect, [Mr.] Street was Notlim, and Notlim was PAS. Furthermore, it is apparent that the only reason that PAS continued to pay Notlim after DOA [7] terminated

6. As the trial court explained in its opinion, "MBEC" refers to the Minority Business Enterprise Counsel. *See* Trial Court Opinion filed 4/12/12 at 3.

7. As the trial court explained in its opinion,

the contract was because they had Appellant ... on the hook. This fact was not lost on Judge Sheppard, who actually presided over the trial and was in a position to view the demeanor and credibility of the witnesses first-hand. Judge Sheppard expressed extreme skepticism throughout the trial as to the legitimacy of the PAS/Notlim relationship, repeatedly referring to the PAS/Notlim relationship as a 'myth.'

\* \* \*

It is clear from Judge Sheppard's commentary during the trial, that he was incredulous as to Notlim's purported 'independence' from PAS. It became clear to Judge Sheppard, and everyone else in his courtroom, that Notlim was merely a 'pass-through,' which had been created by, and was utilized by, [Mr.] Velardi and PAS to keep the profitable baggage maintenance contract in house, and surreptitiously and illegally, to feign compliance with the City's strict MBEC requirements. Who better to make these credibility determinations than the deceased Trial Judge who was able to view these witnesses testify first hand, during the trial?

Appellant's Brief at 48–49.

▆▆▆▆ Initially, we note that the rulings to be reviewed in this case are those of Judge New, not Judge Sheppard. As indicated *supra,* after Judge Sheppard unexpectedly died during the course of this litigation, the parties expressly agreed to permit Judge New to render a verdict based on the "cold record" without the benefit of live testimony. Thus, the fact Judge Sheppard may have rendered a different verdict in this case does not necessarily require the conclusion Judge New

erred in failing to grant Appellant's post-trial JNOV motion under an agency theory. Rather, utilizing the appropriate standard of review, we must examine the record to determine whether Judge New properly rejected Appellant's post-trial request for JNOV. *See O'Kelly, supra.*

An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are 'proper, usual and necessary' to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

\* \* \*

▆▆▆▆ The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. The creation of an agency relationship requires no special formalities. The existence of an agency relationship is a question of fact. The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. In establishing agency, one

"DOA" refers to the City of Philadelphia Division of Aviation. *See* Trial Court Opinion

filed 4/12/12 at 4.

need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed.

\* \* \*

 Agency by estoppel, ..., is essentially a determination of agency by after-the-fact actions by the principal. Agency by estoppel contains the elements that the principal intentionally or carelessly caused a third party to believe an agency relationship existed, or knowing that the third party held such a belief, did not take reasonable steps to clarify the facts. Additionally, there must be justifiable reliance by the third party.

\* \* \*

 Where an agent exceeds his authority, and this is known or should be known by the principal, an agency may be created by apparent authority as to such acts; but in such instances the relation of the principal and agent is already established for some purposes. *Walton v. Johnson,* 66 A.3d 782, 786–88 (Pa.Super.2013) (quotations, quotation marks, and citations omitted). An agent cannot simply, by his or her own words, invest himself or herself with apparent authority; but rather, such authority emanates from the principal's action and not the agent's. *Turnway Corporation v. Soffer,* 461 Pa. 447, 336 A.2d 871 (Pa.1975). Knowledge of an agent, acting with the scope of his authority, real or apparent, may be imputed to the principal, and thus, knowledge of the agent is knowledge of the principal. *See Rosenberry v. Evans,* 48 A.3d 1255 (Pa.Super.2012).

 In rejecting Appellant's claim for JNOV regarding fraud and promissory estoppel on the basis of agency, the trial court stated, in relevant part, the following:

During the trial, [Appellant] attempted to establish the existence of an agency relationship between PAS and [Mr.] Street. However, the evidence presented at trial fails to establish [Mr.] Street as an agent of PAS....Although [Mr.] Street was hired as a consultant for PAS, [Mr.] Street was not given the authority by PAS to approve the assignment as it pertained to the baggage maintenance contract. The subcontract for the baggage maintenance contract between Notlim and PAS, which was cancelled by PAS on September 23, 2003, specifically prohibited the assignment of the contract without PAS approval. As such, [Mr.] Street was not a PAS agent as it pertained to the assignment contract.

Trial Court Opinion filed 4/12/12 at 20.

Although Appellant suggests he presented credible evidence establishing PAS and Notlim were actually "the same corporation," Judge New apparently did not find any such evidence credible, as he was permitted to do. *Weston v. Northampton Personal Care, Inc.,* 62 A.3d 947 (Pa.Super.2013) (indicating that, in a non-jury trial, the trial court's credibility determinations are binding on appeal). Simply put, the trial court determined Appellant failed to demonstrate Mr. Street/Notlim was acting with any express authority, apparent authority, implied authority or authority by estoppel, and therefore, the trial court did not find Appellees liable for Mr. Street's/Notlim's fraud. We find no abuse of discretion or error in the trial court's denial of Appellant's motion for JNOV on this basis. *See Reott, supra.* Specifically, viewing the evidence in the light most favorable to Appellees, there is sufficient competent evidence to sustain the trial court's verdict. The fact Appellant desires the trial court to find its evidence to be more credible than that presented by Appellees does not alter our decision.

Appellant next suggests the trial court should not have made credibility determinations based on the "cold record" without explaining the "objective basis" for its determinations. Thus, he suggests he is entitled to a new trial.

Initially, we note, as indicated *supra*, Appellant expressly agreed to Judge New entering a verdict based on a "cold record" in light of Judge Sheppard's unexpected death. Thus, Appellant cannot now be heard to complain that Judge New made his decision in such a manner, without the benefit of live testimony. In any event, in light of the breadth and thoroughness of Judge New's factual findings and conclusions of law, as well as his extensive citation to the exhibits and the notes of testimony, we disagree with Appellant that Judge New failed to provide reasons for crediting some, but not all, of the evidence presented in the non-jury trial. Moreover, as Judge New specifically indicated in considering Appellant's issue:

> In accordance with the Stipulation of the Parties as well as the Rules of Civil Procedure which specifically provide that the trial by jury shall be conducted as nearly as may be as a trial by jury is conducted, the credibility of witnesses and the weight to be given their testimony by reason of their character, intelligence, and knowledge of the subjects are matters for determination by the trial judge. A judge acting as the trier of fact is as much entitled as a jury to use common sense in determining fact questions. The judge may reject contradicted or even uncontradicted testimony where, for any reasons, its credibility is doubtful.

> Here, the court conducted an independent review of the record including but not limited to reading extensive testimony and reviewing exhibits produced and entered as evidence during the trial.

> Based upon said review, the court reached certain conclusions regarding the credibility of witnesses all within the province of the parties' stipulation and rules of court.

Trial Court's Order filed 8/2/12 at 1–2.

We find no abuse of discretion or error of law in this regard, and conclude the trial court appropriately rejected Appellant's post-trial motion on this basis. *See Cangemi ex rel. Estate of Cangemi v. Cone*, 774 A.2d 1262 (Pa.Super.2001) (indicating standard of review for motion for new trial is whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion).

Finally, Appellant contends it is entitled to $3,895,465.00 in "lost profits" from Affiliated Building and/or Linc Facility. Specifically, Appellant contends it is entitled to the profits, which it would have received, had it been properly assigned to perform the baggage maintenance contract in the absence of Affiliated Building and/or Linc Facility's fraud. *See* Appellant's Brief at 31. Appellant suggests the profits were "wrongly retained by [Affiliated Building] and subsequently Linc [Facility] through performing the [b]aggage [m]aintenance [c]ontract 'in house.'" Appellant's Brief at 61.

In light of the fact the trial court did not find either Affiliated Building or Linc Facility to be liable, and Appellant has provided us with no reason to disturb the trial court's verdict in this regard, we summarily reject Appellant's claim that he is entitled to "lost profits" from Affiliated Building and/or Linc Facility.

For all of the foregoing reasons, we affirm.

Affirmed.