J-S05001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HERBERT AND SYLVIA KAUFMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BANK OF AMERICA NATIONAL | : | No. 1013 MDA 2021 |
| ASSOCIATION | : | |

Appeal from the Order Entered July 1, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
3026-2018

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED APRIL 19, 2022**

Herbert and Sylvia Kaufman appeal from the order sustaining the preliminary objections filed by Bank of America, National Association ("Bank of America"), and dismissing the Kaufmans' second amended complaint with prejudice. On appeal, the Kaufmans challenge the promptness of Bank of America's recorded satisfaction pieces for various mortgages. We affirm.

Given our standard of review, the following facts are taken from the Kaufmans' amended complaint. The Kaufmans owned property located in Luzerne County. In 1993, the Kaufmans executed two mortgages on the property in the amounts of $320,000.00 and $40,000.00 with Hazleton

National Bank ("the Hazleton mortgages").[1] The Kaufmans also executed an assignment of rents pertaining to the $40,000.00 mortgage. *See* Second Amended Complaint, 4/1/21, ¶¶ 9-11. In 2004, the Kaufmans executed a line of credit secured by the property for $246,200.00 and a mortgage of $300,000.00, both with Fleet Bank. *See id.*, ¶¶ 12-13. The Kaufmans renewed their $246,200.00 line of credit with Fleet Bank in 2007. *See id.*, ¶ 14.

The Kaufmans subdivided a portion of the property in 2008, "splitting off approximately 21.72 acres of land for the construction of a primary residence." *Id.*, ¶ 15. The same year, the Kaufmans executed partial releases on the 2004 Fleet Bank line of credit and mortgage. *See id.*, ¶¶ 17-18.

In 2017, the Kaufmans entered into an agreement for the sale of the property and residence. *See id.*, ¶ 19. The Kaufmans intended to transfer the property as part of a Section 1031 exchange.[2] During the buyer's title search, Fidelity National Title Insurance Company identified six liens against the property. *See id.*, ¶ 20. The Kaufmans believed only two liens remained active

---

[1] Bank of America is Hazleton National Bank's successor-in-interest. We note that the Kaufmans generally alleged that Bank of America acquired Fleet Bank and Hazleton National Bank "through a succession of mergers." Complaint, 6/22/18, ¶ 5. However, the Kaufmans did not specifically identify any assignments of the mortgages at issue or attach the pertinent documents evidencing Bank of America's ownership of the mortgages.

[2] Section 1031 of the Internal Revenue Code governs the exchange of real property used for business or as an investment for property of like kind. *See* 26 U.S.C.A. § 1031.

at that time and requested that Bank of America issue a release or satisfaction. *See id.*, ¶¶ 21-23. Following correspondence with a Bank of America representative, the Kaufmans were informed that a lien release would not be processed until all loans had been paid in full.

The settlement took place on February 14, 2018. Due to the existing liens on the property, the closing agent held a total of $1,212,400.00 in escrow. *See* Second Amended Complaint, 4/1/21, Exhibit I (Settlement Agreement). Additionally, the Kaufmans were unable to participate in a Section 1031 exchange because the funds could not be released for purchase of another property. *See* Second Amended Complaint, 4/1/21, ¶¶ 54-58.

The Kaufmans initiated the instant action by filing a writ of summons. On June 22, 2018, the Kaufmans filed a complaint alleging Bank of America failed to satisfy the Hazleton mortgages, in violation of 21 P.S. § 721-6.[3] The Kaufmans also set forth a breach of contract action based on Bank of America's failure to terminate the assignment of rents.

Following additional litigation, the Kaufmans sought leave to amend their complaint. The parties entered a stipulation on the matter, and the

---

[3] The Mortgage Satisfaction Act provides, "[a]fter the entire mortgage obligation as well as all required satisfaction and recording costs have been paid to the mortgagee, the mortgagor may send a notice to the mortgagee to present for recording a satisfaction piece to avoid damages." 21 P.S. § 721-6(a).

Kaufmans filed their second amended complaint on April 1, 2021.[4] Therein, the Kaufmans included counts for breach of contract based on Bank of America's failure to terminate the assignment of rents, negligent misrepresentation, detrimental reliance, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201.10. The Kaufmans abandoned their Mortgage Satisfaction Act claim because Bank of America had recorded satisfaction pieces on the mortgages in 2018.

Bank of America filed preliminary objections in the nature of a demurrer. The Kaufmans filed a response. The trial court conducted an argument, at which time the Kaufmans formally withdrew their breach of contract and negligent misrepresentation claims. On July 1, 2021, the trial court entered an order sustaining Bank of America's preliminary objections and dismissing the Kaufmans' second amended complaint with prejudice. The Kaufmans filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal

"Preliminary objections in the nature of a demurrer should be granted where the contested pleading is legally insufficient." *Cooper v. Church of St. Benedict*, 954 A.2d 1216, 1218 (Pa. Super. 2008). A challenge to the grant of preliminary objections presents a question of law:

---

[4] The Kaufmans did not file a first amended complaint. However, for clarity, we will refer to the document as titled by the Kaufmans.

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1285 (Pa. Super. 2013) (citation omitted).

In their appellate brief, the Kaufmans generally claim the trial court erred in sustaining Bank of America's preliminary objections and improperly concluded the Kaufmans did not assert a *prima facie* case. **See** Appellants' Brief at 18-23. In support of their detrimental reliance claim, the Kaufmans assert Bank of America was required to file a release after each mortgage was fully paid. **See id.** at 24. According to the Kaufmans, Bank of America assured the Kaufmans it would file the satisfaction pieces but failed to do so. **See id.** The Kaufmans claim they relied on Bank of America's promise to record the releases in February 2018. **See id.** at 25. The Kaufmans argue their reliance on Bank of America's claims resulted in over $1,200,00.00 being held in escrow following the sale of the property. **See id.** at 25, 27.

In their UTPCPL claim, the Kaufmans contend the trial court abused its discretion by determining the Kaufmans insufficiently pled fraud or deceptive conduct. *See id.* at 27-28. The Kaufmans argue Bank of America committed fraud

> by denying liability, by failing to issue discharges of debts under its control, by failing to act promptly, by causing a delay in the [Kaufmans] being able to use sale proceeds for the purchase of another property, and by causing the [Kaufmans] to be liable for substantial taxes due to their delay in filing discharges.

*Id.* at 29. As a result, the Kaufmans claim they are entitled to punitive damages. *See id.* at 31-32.

As an initial matter, we observe Bank of America correctly points out that the Mortgage Satisfaction Act is "the exclusive remedy for damages for failure of a mortgagee to issue and present for recording a satisfaction piece." 21 P.S. § 721-6(d)(4). Here, the Kaufmans' claims were premised on Bank of America's alleged failure to promptly record the mortgage satisfaction pieces and inform the Kaufmans when the satisfaction pieces were recorded. These assertions clearly implicate the Mortgage Satisfaction Act, a claim the Kaufmans abandoned in their second amended complaint based on Bank of America's recording of the satisfaction pieces.[5] Nevertheless, we will briefly address the Kaufmans' claims as they have been presented.

---

[5] Even if a claim under the Mortgage Satisfaction Act was properly before us, it would not entitle the Kaufmans to relief. The Kaufmans' purported harm was their inability to participate in a Section 1031 exchange of like-kind property.
*(Footnote Continued Next Page)*

In its opinion, the trial court concluded the Kaufmans failed to plead any facts to establish the existence of a "promise" made by Bank of America to sufficiently plead a claim of detrimental reliance. **See** Trial Court Opinion, 9/14/21, at 4. Similarly, the trial court concluded that the Kaufmans failed to aver fraudulent or deceptive conduct by Bank of America and could not establish justifiable reliance or causation under the UTPCPL. **See id.** at 6. The trial court also stated that, in support of both claims, the Kaufmans improperly relied on "representations" made by Bank of America in their pleadings. **See id.** at 5 n.6, 6.

Our review confirms the trial court's legal conclusions. In their second amended complaint, the Kaufmans baldly asserted that Bank of America made

_____

Pursuant to Section 1031, a taxpayer must identify a property to be received in the exchange within 45 days after transfer of the property to be relinquished in the exchange. **See** 26 U.S.C.A. § 1031(a)(3)(A). The settlement date for the sale of the property was February 14, 2018. Therefore, under Section 1031, the Kaufmans were required to identify a property to be received in exchange by April 2, 2018.

To avoid a penalty under the Mortgage Satisfaction Act, a mortgagee must record a satisfaction piece within 60 days of receiving full payment of the mortgage and any satisfaction and recording costs, **and** the first written request by the mortgagor for the recording of a satisfaction piece. **See** 21 P.S. § 721-6(d)(1). Though the Kaufmans direct our attention to fax communications between their attorney and the Bank of America representative, the Kaufmans do not allege that they served upon Bank of America a notice to satisfy the loans. **See generally** Second Amended Complaint, 4/1/21, Exhibits C, D. The Kaufmans did not send a notice in accordance with Section 721-6(c) until February 13, 2018. Therefore, Bank of America had until April 16, 2018 to record the satisfaction pieces. Bank of America executed and recorded the satisfaction pieces prior to that date.

"representations" that it had no relationship with Hazleton National Bank and was not responsible for recording mortgage satisfactions. The Kaufmans do not explicitly explain how these representations then led to damages.

If we look at the Kaufmans' UTPCPL claim in the second amended complaint, we glean a possible answer. There, the Kaufmans asserted that Bank of America "failed to inform [the Kaufmans] regarding whether the $40,000.00 Hazleton National Mortgage or the $320,000.00 Hazleton National Mortgage had been satisfied[.]" Second Amended Complaint, 4/1/21, ¶ 89. The detrimental reliance claim has similar language. Taking the Kaufmans' allegations as true, as we must under our standard of review, it is clear the Kaufmans suffered some injury because they did not become aware the Hazleton mortgages had been marked satisfied until December 2018. Accordingly, the basis of the Kaufmans' claims is that Bank of America failed to timely inform them that the Hazleton mortgages had been marked satisfied.

In order to plead a *prima facie* case for detrimental reliance, the Kaufmans were required to allege that Bank of America made a promise that the Kaufmans relied on to their detriment, and enforcement of the promise is the only means of avoiding injustice. **See V-Tech Servs., Inc. v. Street**, 72 A.3d 270, 276 (Pa. Super. 2013). The Kaufmans' UTPCPL claim also requires similar allegations, with the primary difference being that Kaufmans would be required to establish that Bank of America engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73

P.S. § 201-2(4)(xxi); *see also Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649-50 (Pa. 2021).

The second amended complaint is devoid of factual averments that can establish Bank of America owed the Kaufmans a duty to inform them the Hazleton mortgages had been marked satisfied. Similarly, the record is devoid of any evidence that Bank of America actively concealed the status of the Hazleton mortgages from the Kaufmans. The Mortgage Satisfaction Act does not require Bank of America to provide any notice of the satisfaction to the Kaufmans. Nor do the mortgage documents require that Bank of America provide any notice that the mortgages had been marked satisfied.

On appeal, the Kaufmans do not explicitly reference a right to be notified, instead muddling their argument with references to Bank of America's duty to mark the Hazleton mortgages satisfied. *See* Appellants' Brief at 24-31. As noted above, the Mortgage Satisfaction Act is the sole avenue for relief on the claim that Bank of America did not timely mark the mortgages satisfied, and the Kaufmans conceded that Bank of America complied with the requirements of the Mortgage Satisfaction Act. The Kaufmans therefore have not established that the trial court erred in concluding that they failed to establish Bank of America owed them any duty to inform them that the mortgages had been marked satisfied.

In sum, the record establishes that Bank of America timely marked the mortgages satisfied under the Mortgage Satisfaction Act. The Kaufmans

alleged that they suffered damages because they did not learn of the satisfaction in time to take advantage of certain tax treatments of the sale of the subject property. However, the Kaufmans failed to establish that Bank of America had any duty to inform them that the mortgages had been marked satisfied, and therefore, they did not allege a *prima facie* case for a violation of the UTPCPL or detrimental reliance.

Based upon the foregoing, we affirm the trial court's order sustaining Bank of America's preliminary objections and dismissing the Kaufmans' complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/19/2022