J-S15044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMY L. WILLIAMS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FEMMEPHARMA CONSUMER | : | No. 2285 EDA 2023 |
| HEALTHCARE, GERIANNE T. | : | |
| DIPIANO, MICHAEL A. DIPIANO, JR., | : | |
| FEMMEPHARMA, FEMMEPHARMA | : | |
| GLOBAL HEALTHCARE, INC., | : | |
| FEMMEPHARMA HOLDING COMPANY, | : | |
| INC., BRUCE D. GORCHOW, ANDREA | : | |
| MCFADDEN, PPM AMERICA CAPTIAL | : | |
| PARTNERS, LLC, PPM AMERICA | : | |
| PRIVATE EQUITY FUND, LP | : | |

Appeal from the Judgment Entered August 21, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2018-07261

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 05, 2024**

Appellant, Amy L. Williams (Plaintiff), appeals from a judgment entered in favor of all defendants following a nonjury trial in an action that she brought against FemmePharma Consumer Healthcare, LLC (FPCH), Gerianne T. DiPiano, and Michael A. DiPiano, Jr. (collectively, Defendants) for unpaid salary and other employment-related benefits and compensation allegedly owed to her by FPCH.  For the reasons set forth below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Plaintiff brought this action alleging that she was employed by FPCH as its president in 2016 and 2017 under a contract agreed to by Ms. DiPiano, FPCH's chief executive officer and the chairman of its board of directors, on behalf of FPCH. Third Amended Complaint ¶¶6-8, 49-57. Plaintiff alleged that this contract provided that Plaintiff was to be paid an annual salary of $255,000, an annual stipend of $20,000 for benefits, a ten percent equity interest in FPCH, a years' salary as severance pay, and incentive compensation for deferring payment of the compensation. *Id.* ¶¶58-59. Plaintiff alleged that no compensation was paid to her during her employment and that no severance payment was made to her after FPCH terminated her employment in early October 2017. *Id.* ¶¶77-79, 81, 86, 94, 121. Plaintiff asserted a breach of contract claim against FPCH, a claim for liability under the Wage Payment and Collection Law (WPCL)[1] against FPCH, Ms. DiPiano, and Mr. DiPiano, who was also a director of FPCH, and a promissory estoppel claim against FPCH. *Id.* ¶¶18, 84-123. Plaintiff also sued several other individuals and entities and asserted a cause of action for unjust enrichment. Plaintiff, however, discontinued her claim for unjust enrichment and her claims against those individuals and entities before the end of the trial in this action.

Defendants disputed that Plaintiff was hired as an employee of FPCH and alleged that her work for FPCH was as a part-time independent contractor

---

[1] 43 P.S. § 260.1 *et seq*.

consultant.  Defendants' Answer and New Matter, Answer ¶¶6-8, 49-57, New Matter ¶21.  Defendants denied that FPCH agreed to pay Plaintiff the salary and benefits that Plaintiff alleged.  *Id.*, Answer ¶¶58-59, New Matter ¶¶5-18. Defendants also alleged that the only compensation that FPCH agreed to pay Plaintiff for her consulting work consisted of payments of $5,000 per month and that Plaintiff terminated her work for FPCH by leaving its offices and not returning.  *Id.*, New Matter ¶¶21-22.

In April 2022, four years after this case was brought, Plaintiff served a notice of deposition seeking to take the deposition of a designee of FPCH and two of its affiliate companies on various subjects.  Amended Notice of Designee Depositions, attached to Defendants' Motion for Protective Order as Exhibit C.  This notice of deposition listed subjects of the deposition and requested documents that included tax returns, financial reports, other financial documents of FPCH and those affiliate companies and sought information concerning all shareholders, employees, investors, independent contractors, members, and consultants of the three companies.  Amended Notice of Designee Depositions, Attachments A and B.  Defendants filed a motion for a protective order to limit the subjects of the depositions to 10 of the 25 listed topics and the documents to be produced to 6 of the 23 document requests, which the trial court granted on May 26, 2022.  Trial Court Order, 5/26/22.

This case was tried to the court without a jury from December 5, 2022 to December 12, 2022. At trial, the primary witnesses and the only witnesses with knowledge of the communications and alleged agreements on which Plaintiff's claims were based were Plaintiff and Ms. DiPiano. Both Plaintiff and Ms. DiPiano testified that FPCH was in the process of raising money from investors to launch a new product when Plaintiff's relationship with the company began, that FPCH needed to raise capital of $1.5 million to $3 million to launch the new product, and that no capital was raised while Plaintiff was working for FPCH. N.T. Trial, 12/5/22 at 121-22, 160, 178, 180-81; N.T. Trial, 12/6/22 at 74, 84-85, 237-39; N.T. Trial, 12/8/22 at 36; N.T. Trial, 12/9/22 at 7, 25-26. It was undisputed that there was no signed writing or exchange of written communications setting forth the nature or terms of Plaintiff's work relationship with FPCH. N.T. Trial, 12/5/22 at 15; N.T. Trial, 12/6/22 at 167-68, 175-76, 183-85, 212; N.T. Trial, 12/7/22 at 92-93; N.T. Trial, 12/9/22 at 74-75, 93.

Plaintiff testified that Ms. DiPiano orally hired her as president of FPCH to launch the new product and orally agreed that Plaintiff would be paid an annual salary of $240,000, later increased to $255,000, and receive an annual stipend of $10,000 for benefits, later increased to $20,000, a ten percent equity interest in FPCH, and a years' salary as severance pay. N.T. Trial, 12/5/22 at 123-24, 170, 172-76, 186, 191; N.T. Trial, 12/6/22 at 61-62, 110-16, 122-24, 193-95, 198-202; N.T. Trial, 12/7/22 at 118-22. Plaintiff

admitted that she knew that she could not be paid that compensation until FPCH raised the necessary capital for the product launch but testified that Ms. DiPiano assured her that the capital would be raised by early 2016 and that Plaintiff would receive a bonus or retroactive salary after the capital was raised. N.T. Trial, 12/5/22 at 122-24, 170-71, 173, 176-80; N.T. Trial, 12/6/22 at 143-45, 195-98; N.T. Trial, 12/7/22 at 118-19, 121-22. Plaintiff testified that she did not agree to work for FPCH as a consultant and that Ms. DiPiano made clear that Plaintiff was an employee, unlike the two other individuals in FPCH's senior management, who were consultants. N.T. Trial, 12/6/22 at 13-14, 17-18. Plaintiff testified that she began working for FPCH at the beginning of 2016, that she worked full-time for FPCH, that Ms. DiPiano exercised control over her work, and that she was terminated effective October 3, 2017. N.T. Trial, 12/5/22 at 123-28, 130, 132, 134, 139-40, 151-52, 154, 157, 161, 165-66, 218; N.T. Trial, 12/6/22 at 53, 65, 67-68, 156-58, 168-69, 210-12.

Ms. DiPiano testified that she did not agree to hire Plaintiff as an employee of FPCH or agree that Plaintiff would be paid the amounts that she claimed. N.T. Trial, 12/7/22 at 147, 176-79; N.T. Trial, 12/8/22 at 124-25; N.T. Trial, 12/9/22 at 54-56. Ms. DiPiano testified that the salary, benefits, and equity interest that Plaintiff claimed were discussed as possible compensation that Plaintiff could receive if capital was successfully raised and the new board of directors chosen by the investors approved hiring her as

president under such a contract and as the compensation for the position that would be used in estimating FPCH's expenses in presentations to possible investors. N.T. Trial, 12/7/22 at 147-51, 176-79; N.T. Trial, 12/8/22 at 124-25; N.T. Trial, 12/9/22 at 91-92; N.T. Trial, 12/12/22 at 126. Ms. DiPiano testified that FPCH had no significant business while Plaintiff was involved with the company and that she made clear to Plaintiff that FPCH needed to raise $3 million to start up its business before there could be any such compensation agreement. N.T. Trial, 12/7/22 at 178, 182-83, 197; N.T. Trial, 12/8/22 at 101, 125, 128-29, 248-49. Ms. DiPiano further testified that raising this money was one of Plaintiff's primary responsibilities and that the ability to raise the money and time within which that would occur were very uncertain. N.T. Trial, 12/7/22 at 138-39, 182-83; N.T. Trial, 12/8/22 at 94, 128-29, 248-49, 252-53, 255-57.

Ms. DiPiano testified that all of the senior management of FPCH during this fund-raising phase worked as consultants and that the agreement with Plaintiff was that Plaintiff would work as consultant with the title of president of FPCH. N.T. Trial, 12/7/22 at 55-57, 84-89, 91-93, 139-40, 180, 184-88, 212; N.T. Trial, 12/8/22 at 252-54, 266-68; N.T. Trial, 12/9/22 at 100. Ms. DiPiano testified that she agreed that Plaintiff would be paid $5,000 per month for her work for FPCH during this phase after Plaintiff requested that she receive a retainer before funding was obtained, that Plaintiff was paid $5,000 per month from Ms. DiPiano's own bank account for the period from April 2016

through October 2016, and that Plaintiff was later paid an additional $35,000 from Ms. DiPiano for her work in 2017. N.T. Trial, 12/7/22 at 92-93, 155, 157, 198-99; N.T. Trial, 12/8/22 at 123, 280-83; N.T. Trial, 12/9/22 at 5-7, 57-58, 81; N.T. Trial, 12/12/22 at 125-27. Ms. DiPiano testified that Plaintiff did not work for FPCH on a full-time basis in 2016 and 2017, that she did not exercise control over Plaintiff's work, and that Plaintiff's work for FPCH ended when Plaintiff walked out of the company's offices in early October 2017. N.T. Trial, 12/7/22 at 184, 187, 202; N.T. Trial, 12/8/22 at 25-26, 269; N.T. Trial, 12/9/22 at 30-42, 104-06.

The trial court issued its decision on June 1, 2023. In this decision, the trial court found Ms. DiPiano's testimony more credible than Plaintiff's and found that the discussions concerning employment and the amounts claimed by Plaintiff were for a possible prospective contract to be proposed to FPCH's post-funding board of directors after the fundraising to launch the product was obtained, not a present employment agreement. Trial Court Decision ¶¶10-11, 13, 16, 32, 40. The trial court found that Plaintiff agreed to work for FPCH as a consultant in the period before funding was obtained and that the only compensation that FPCH agreed to pay Plaintiff was the $5,000 per month that Ms. DiPiano paid her. *Id.* ¶¶15, 21-23. The trial court further found that the parties understood that Plaintiff was responsible for raising start-up capital for FPCH before the prospective employment contract could be proposed for approval and that Plaintiff failed to raise any capital for FPCH. *Id.* ¶¶11, 13,

17-19, 24-26. The trial court accordingly held that Plaintiff's breach of contract, WPCL, and promissory estoppel claims failed because Plaintiff did not prove that she had any employment contract with FPCH or that FPCH breached any agreement with her or promise to her. *Id.* ¶¶30, 32-37, 40.

Plaintiff filed a timely post-trial motion in which she asserted that the trial court erred in failing to find that there was a contract to employ Plaintiff under the terms that she alleged and that there was a promise to pay her in accordance with those terms and sought judgment notwithstanding the verdict (JNOV) in her favor on all three of her causes of action. In this post-trial motion, Plaintiff also asserted that the trial court erred in granting the May 27, 2022 protective order and that the protective order prevented her from obtaining relevant evidence for trial. Plaintiff's Post-Trial Motion ¶¶6, 43. On July 25, 2023, the trial court denied Plaintiff's post-trial motion, and judgment was entered in favor of Defendants and against Plaintiff on August 21, 2023. This timely appeal followed.

Plaintiff raises the following issues in this appeal: (1) whether the trial court erred in rejecting her claim that she had a contract with FPCH under which she was hired as an employee at a salary of $240,000 or more per year plus additional benefits and equity;[2] (2) whether the trial court erred in finding

---

[2] Plaintiff states these as two separate issues, her Issues Nos. 1 and 2. We discuss them as one issue, as they are merely separate arguments on the same issue.

- 8 -

that Plaintiff was not an employee of FPCH because it did not consider and apply the legal test for determining whether a person is an employee; (3) whether the trial court erred in failing to apply the provisions of the WPCL; (4) whether the trial court erred in holding that Plaintiff failed to prove her promissory estoppel claim; and (5) whether the trial court abused its discretion in granting the protective order. Appellant's Brief at 4-5. Plaintiff requests as relief a new trial or other further determinations by the trial court. *Id.* at 73-74.[3]

The first of these issues, Plaintiff's challenge to the trial court's rejection of her contract claim, fails because the trial court's determinations are factual findings based on the credibility of conflicting oral testimony. "[I]n the case of a disputed oral contract, what was said and done by the parties, as well as what was intended by what was said and done by the parties, are questions of fact to be resolved by the trier of fact, in this instance the trial court." *Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*). Questions of credibility and conflicts in the evidence are for the factfinder to resolve, and this Court cannot reweigh the

---

[3] Defendants argue that Plaintiff has waived all of her issues because she sought only JNOV in her post-trial motion, which is different from the relief that she seeks in this Court. We do not agree. If a party has argued an issue that is grounds for a new trial, the fact that the party sought only JNOV does not preclude the court from granting a new trial. *McGuire v. Schneider, Inc.*, 534 A.2d 115, 120 (Pa. Super. 1987), *aff'd without opinion*, 548 A.2d 1223 (Pa. 1988). The fact that Plaintiff sought JNOV in her post-trial motion, rather than a new trial, therefore does not bar her claims on appeal.

evidence. ***Shamnoski v. PG Energy***, 858 A.2d 589, 593 (Pa. 2004); ***United Environmental Group, Inc. v. GKK McKnight, LP***, 176 A.3d 946, 962 (Pa. Super. 2017).

Plaintiff argues that these fundamental principles do not bar her claim of error because the trial court allegedly misconstrued a written document, Plaintiff's Exhibit 31, and because she was given the title of President of FPCH and worked for FPCH for 21 months. None of these arguments has merit.

Plaintiff's Exhibit 31 was not a writing signed by FPCH. Rather, it was an unsigned employment contract template given by Ms. DiPiano to Plaintiff for Plaintiff to fill in terms and the only handwriting on the document is Plaintiff's. Plaintiff's Ex. 31; N.T. Trial, 12/5/22 at 172; N.T. Trial, 12/6/22 at 109-10, 192-93; N.T. Trial, 12/8/22 at 127-28, 259-60, 263; N.T. Trial, 12/9/22 at 85. What the parties intended the document to be thus depended on the credibility of conflicting oral testimony. Plaintiff characterized the marked-up document as a memorialization of the initial terms of an alleged oral agreement but admitted that it did not include one of the terms, severance pay, that she claimed was part of the agreement that the document allegedly memorialized. N.T. Trial, 12/5/22 at 172-76; N.T. Trial, 12/6/22 at 116, 193-94. Ms. DiPiano testified that the document was a "wish list" of what Plaintiff wanted to be in a future contract to be proposed to the board of directors of the FPCH after funding was obtained that would also be used in projecting expenses in presentations to investors, not a contract governing

Plaintiff's relationship with FPCH at the time, and that she gave Plaintiff the blank template for Plaintiff to fill in what Plaintiff wanted to be in that proposed future contract. N.T. Trial, 12/7/22 at 147-51, 190; N.T. Trial, 12/8/22 at 124-25, 127-30, 259-64; N.T. Trial, 12/9/22 at 84-85, 91-92. The trial court's conclusion that Plaintiff's Exhibit 31 was not a contract agreed to by FPCH was thus a resolution of the credibility of conflicting oral testimony, which we may not disturb, not a construction of a writing.

Neither of the other items of evidence argued by Plaintiff invalidate the trial court's findings. While Plaintiff was given the title of president in 2016 and worked under that title in 2016 and 2017, that does not require a finding that her arrangement with FPCH was an employment rather than a consulting relationship, let alone show any of the economic terms of that arrangement. The title itself did not establish employment status because the evidence was undisputed that in 2016 and 2017 before funds were raised to launch FPCH's product, the other senior management of FPCH who had corporate titles were consultants, not employees. N.T. Trial, 12/6/22 at 13; N.T. Trial, 12/7/22 at 55-57, 84-89, 91-92, 180, 187; N.T. Trial, 12/8/22 at 185, 197-98, 201-06, 226, 267-68; N.T. Trial, 12/9/22 at 100, 189, 194, 197, 199-205, 221.

Plaintiff's work for FPCH likewise did not show that she was an employee rather than a consultant or require the trial court to find that her work was an acceptance of an offer of employment or of the terms that she alleged. The evidence was disputed as to whether Plaintiff was working full-time on a

regular basis or whether she was doing part-time work for FPCH, and there was evidence that she was working under an agreement to pay her a $5,000 per month retainer as a consultant, which the trial court found credible. N.T. Trial, 12/7/22 at 92-93, 155, 157, 184-87, 198-99; N.T. Trial, 12/8/22 at 123, 269, 280-83; N.T. Trial, 12/9/22 at 5-7, 81; N.T. Trial, 12/12/22 at 125-27; Trial Court Decision ¶¶13, 15, 21-23.

In her next issue, Plaintiff seeks reversal of the trial court's determination that she was a consultant rather than an employee on the ground that the court did not analyze the criteria set forth by our Supreme Court in *Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389 (Pa. 1968), for determining whether a relationship is an employment relationship or an independent contractor relationship. We conclude that this issue is barred by waiver.

Where, as here, the trial court has issued an order under Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, the appellant must file a statement that identifies each ruling or error that the appellant intends to challenge on appeal with sufficient detail to enable the trial court to identify and address those issues. Pa.R.A.P. 1925(b)(4)(ii); *S.S. v. T.J.*, 212 A.3d 1026, 1030-31 (Pa. Super. 2019). "Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). Vague language that that does not advise the trial court of the specific issue as to which error is

claimed does not satisfy Rule 1925(b) and does not preserve any issue for appeal. ***Brown v. End Zone, Inc.***, 259 A.3d 473, 485 (Pa. Super. 2021); ***Lineberger v. Wyeth***, 894 A.2d 141, 148-49 (Pa. Super. 2006).

While Plaintiff's Rule 1925(b) statement set forth claims of error concerning specific factual findings by the trial court and a claim that the protective order was reversible error, it made no assertion that the trial court failed to apply the criteria that she now argues and no claim of legal error in determining whether the facts that the trial court found constituted an employment relationship. Rather, the only claims of errors of law that her Rule 1925(b) statement asserted with respect to the trial court's June 1, 2023 decision were the vague claims that the court "erred in failing to identify and apply the proper legal principles applicable to Plaintiff's equitable, statutory, and common law rights and the claims in Counts I, II, and II [*sic*] under the facts established at trial," the claim that the court "appl[ied] incorrect principles of law" to allegedly "erroneous facts," and claims of legal error concerning other subjects, "common law contract and intertwined applicable statutory WPCL (43 P.S. Section 260.1 *et seq.*) compliance provisions, including with regard to its apparent reasoning on a lack of contract formation and enforceable promise" and the elements of her promissory estoppel claim. Statement of Errors Complained of on Appeal at 2.

> Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. Our courts have recognized that:

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."

*Brown*, 259 A.3d at 485 (Pa. Super. 2021) (quoting *Lineberger*). Plaintiff's vague references to "proper legal principles" and "incorrect principles of law" did not in any way advise the trial court that she was claiming any error in failing to apply the criteria for determining whether a work relationship is an employment relationship or any error of law on the issue of whether Plaintiff was an employee or an independent contractor. As a consequence of Plaintiff's failure to refer to this issue at all, the trial court was unaware that Plaintiff was making any claim that it erred in failing to determine whether she was legally an employee under the facts that it found and did not address the *Hammermill Paper* criteria that Plaintiff now faults it for failing to analyze. Trial Court Opinion at 11-12. Plaintiff's omission from her Rule 1925(b) statement of any claim that the trial court erred in failing to determine that she was an employee therefore waived any claim of error with respect to this issue.

Plaintiff argues that her failure to include this issue in her Rule 1925(b) statement does not constitute waiver because Rule 1925(b) provides that "generality of the [Rule 1925(b)] Statement will not be grounds for finding

waiver" where "the appellant in a civil case cannot readily discern the basis for the judge's decision" and the appellant "preface[s] the [Rule 1925(b)] Statement with an explanation as to why the Statement has identified the errors in only general terms." Pa.R.A.P. 1925(b)(4)(vi). This contention is without merit. Although Plaintiff did state in her Rule 1925(b) statement that the trial court's June 1, 2023 decision "embodies reasoning that on several issues may be too vague and not discernable to allow accurate framing for appeal," Statement of Errors Complained of on Appeal at 1, her characterization of the trial court's June 1, 2023 decision is inaccurate. Contrary to Plaintiff's assertion, the decision set forth the trial court's findings, reasoning, and conclusions in detail and was sufficiently clear and specific to enable Plaintiff to discern the basis for the trial court's rejection of her claims against Defendants and to determine what claims of error she intended to argue on appeal. Rule 1925(b)(4)(vi) therefore has no applicability to Plaintiff's challenges to the trial court's June 1, 2023 decision and cannot excuse her failure to specifically raise this claim of error.

Plaintiff's next two issues both fail because the legal errors of which she complains are irrelevant in light of the trial court's supported factual findings. In the first of these issues, Plaintiff argues that the trial court erred in failing to apply Sections 3 and 4 of the WCPL, 43 P.S. §§ 260.3, 260.4, governing employers' payments of wages and fringe benefits to employees. The WPCL, however, applies to employees, not to independent contractors. ***Morin v.***

***Brassington***, 871 A.2d 844, 849-50 (Pa. Super. 2005). Because the trial court determined that Plaintiff was not an employee of FPCH, Trial Court Decision ¶¶12-13, 15, 32-35, and Plaintiff has not shown any ground for reversing that ruling, Sections 3 and 4 of the WPCL are inapplicable and the trial court did not err in failing to apply them.

With respect to her promissory estoppel claim, Plaintiff argues that the trial court erred in failing to recognize that continuing to work in reliance of a promise of compensation satisfies the reliance element of this cause of action, ***see Sullivan v. Chartwell Investment Partners, L.P.***, 873 A.2d 710, 717-18 (Pa. Super. 2005), and in ruling that only damages for reliance expenses are recoverable on a promissory estoppel claim. Neither of these arguments can constitute grounds for reversal because the trial court found that Plaintiff failed to prove another element of this claim. Plaintiff was required to prove as an essential element of her promissory estoppel cause of action that FPCH made the promise that she seeks to enforce. ***Crouse v. Cyclops Industries***, 745 A.2d 606, 610 (Pa. 2000); ***V-Tech Services, Inc. v. Street***, 72 A.3d 270, 276-77 (Pa. Super. 2013); ***Sullivan***, 873 A.2d at 717-18. The trial court found that Plaintiff failed to prove that essential element, Trial Court Decision ¶¶10-13, 15-19, 21-26, 40, and that finding, as discussed above, is supported by the evidence that the trial court found credible. Since Plaintiff failed to prove the promise on which her promissory estoppel claim depended, any error with respect to reliance or damages would not change the fact that FPCH

was entitled to judgment in its favor on this cause of action and need not be considered by this Court.

In her final claim of error, Plaintiff challenges the trial court's 2022 protective order and argues that it prevented her from obtaining relevant testimony and documents that she needed for trial. Our review of this issue is limited to determining whether the trial court abused its discretion in granting the protective order. ***Bensinger v. University of Pittsburgh Medical Center***, 98 A.3d 672, 682 (Pa. Super. 2014) (standard of review when determining the propriety of a discovery order is whether the trial court committed an abuse of discretion); ***De Lage Landen Financial Services, Inc. v. Urban Partnership, LLC***, 903 A.2d 586, 592 (Pa. Super. 2006) (same).

Plaintiff has not shown that the trial court's protective order improperly limited her discovery. The protective order applied only to a corporate designee deposition and permitted discovery with respect to all of the subjects and documents in Plaintiff's notice that related to Plaintiff or her work for FPCH or to Ms. DiPiano's authority over FPCH's management and its hiring, supervising, and terminating employees and independent contractors. Trial Court Order, 5/26/22; Amended Notice of Designee Depositions Attachment A ¶¶1, 10-11, 19-20, 23, 25, Attachment B ¶¶1, 5, 19-20. In addition, the protective order specifically permitted discovery of documents and subjects relating to "[t]he factual averments and denials in the pleadings, declarations,

and discovery responses in this case, including those of all parties" and discovery of FPCH's policies and procedures regarding employees and independent contractors. Trial Court Order, 5/26/22; Amended Notice of Designee Depositions Attachment A ¶¶1, 15, 18, Attachment B ¶¶1, 9. In contrast, the items as to which the order denied discovery sought broad categories of documents and information that encompassed non-parties and sought discovery of those items and matters regardless of any connection to Plaintiff or her claims in this case. Amended Notice of Designee Depositions Attachment A ¶¶2-9, 12-14, 16-17, 22, 24, Attachment B ¶¶2-4, 6, 8, 10-18, 21-23.

Plaintiff argued to the trial court that some of these latter discovery requests denied by the protective order were relevant to respond to Defendants' averments in specific paragraphs of their Answer and New Matter concerning FPCH's finances when Plaintiff was working for the company and Plaintiff's failure to raise capital, were relevant to Defendants' claim, set forth in their Answer and New Matter, that Plaintiff was an independent contractor, and were relevant to the issue of Ms. DiPiano's authority to hire Plaintiff. Plaintiff's Answer to Defendants' Motion for Protective Order at 11-20. The protective order, however, did not deny Plaintiff discovery on any of those topics, as it allowed the discovery requests that sought documents and information concerning the factual basis for claims in Defendants' Answer and New Matter, Plaintiff's work for FPCH, including the "functions, services, job

duties, scope of work, management responsibilities" of that work and FPCH's supervision of the that work, FPCH's policies and procedures regarding employees and independent contractors, and Ms. DiPiano's authority. Trial Court Order, 5/26/22; Amended Notice of Designee Depositions Attachment A ¶¶1, 10-11, 15, 18, 23, 25, Attachment B ¶¶1, 9.

Plaintiff also asserted that the items as to which discovery was denied were relevant to her unjust enrichment claim, her damages claim for a 10% equity interest, and WPCL issues. Plaintiff's Answer to Defendants' Motion for Protective Order at 11-20. Any denial of discovery on these issues could not have any effect on the trial court's decision in this case. Plaintiff voluntarily discontinued her unjust enrichment claim during trial. Stipulation and Order, 12/9/22; N.T. Trial, 12/8/22 at 134-36. The trial court did not address the damages or WPCL issues because it found that Plaintiff had failed to prove that she was an employee of FPCH, failed to prove that there was any contract or promise under which Plaintiff would receive an equity interest, and failed to prove that FPCH breached any contract with her or promise to her. Trial Court Decision ¶¶2 n.2, 8-13, 15, 23, 29-37, 40. Therefore, even if Plaintiff's discovery was restricted on these topics, such an error would be harmless. **Bensinger**, 98 A.3d at 683-84 (denial of discovery was harmless where the discovery was relevant only on an issue that was not a basis of the trial court's judgment).

For the foregoing reasons, we conclude that none of Plaintiff's issues merits relief. Accordingly, we affirm the trial court's judgment in favor of Defendants.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2024